IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| THOMAS E. PEREZ,<br>Secretary of Labor,<br>United States Department of Labor,<br><br>Plaintiff,<br><br>v.<br><br>LOS ARCOS SEAFOOD & GRILL, INC.,<br>d/b/a LOS ARCOS MEXICAN GRILL &<br>SEAFOOD, JOSE GUTIERREZ, JR., and<br>MARTIN ROMO,<br><br>Defendants. | No. 3:12-cv-01133<br>Senior Judge Haynes |

**MEMORANDUM**

Plaintiff Thomas E. Perez, the Secretary of Labor, filed this action under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 et seq., against Defendants, Los Arcos Seafood & Grill, Inc., Jose Gutierrez, Jr., and Martin Romo, seeking back wages and liquidated damages for approximately forty-four (44) employees who previously worked at Los Arcos Seafood & Grill, Inc.

Before the Court is Plaintiff's motion in limine No. 4-to admit employee statements (Docket Entry No. 125), contending that statements obtained by Department of Labor ("DOL") investigators from individuals who were employed by Los Arcos at the time the statements were taken are not hearsay and are admissible at trial under Rule 801(d)(2)(D) of the Federal Rules of Evidence. Plaintiff contends that the statements from the Defendants' hourly employees about when they started and stopped work, their pay, and their conversations with Defendants and/or their agents regarding such matters, are not hearsay under Rule 801(d)(2)(D) because they were (1) made by Los Arcos's employees, (2) concerning matters within the scope of their employment and (3) during the existence of the employment relationship.

In response (Docket Entry No. 137), Defendants argue that the employee statements made by servers, dishwashers, and cashiers, who did not have any involvement or authority into Defendants' payment practices, do not qualify under Rule 801(d)(2)(D) because these employees were not "agents" on matters "within the scope of their employment." Defendants also argue that these employee statements lack any indicia of reliability because those employees are essentially plaintiffs in this action as they stand to gain financially if Defendants are found liable. Defendants further argue that Plaintiff previously refused to disclose the identities of these individuals by invoking the "informant's/informer's privilege," but on the eve of trial has elected to waive the privilege and is now seeking to admit these statements under a hearsay exception, depriving Defendants the opportunity to depose these individuals or cross examine them at trial if their statements are submitted in lieu of live testimony. Defendants argue that Plaintiff's actions violate the spirit and letter of the Federal Rules of Civil Procedure and Evidence and should not be permitted by the Court.

Plaintiff filed this action on November 1, 2012. (Docket Entry No. 1). In Los Arcos' written discovery requests dated May 29, 2013, it asked Plaintiff to produce the names of any witnesses that it intended to call at trial, in addition to any written statements that it had obtained from witnesses. (Docket Entry No. 137-1). On July 1, 2013, Plaintiff produced to Defendants redacted copies of thirteen "Employee Personal Interview Statements" (the "employee statements") that DOL investigators obtained by questioning Los Arcos employees. (Docket Entry No. 137-2). Defendants subsequently requested that Plaintiff disclose the names of the individuals who provided the statements. On September 10, 2013, Plaintiff responded to Defendants' request and invoked the "informant's/informer's privilege," asserting that Plaintiff was not required to produce the names of the individuals providing the statements. (Docket Entry No. 137-3). Defendants did not file a motion to compel.

On July 21, 2014, Plaintiff filed its witness list, stating that it expected to call one or more of the forty-four Los Arcos employees listed on the witness list. (Docket Entry No. 82). The trial was continued thereafter several times. (Docket Entry Nos. 99, 111, and 117).[1] After being transferred to this member of the Court, the final pretrial conference and the trial in this action were reset for February 22, 2016 and March 8, 2016, respectively. (Docket Entry Nos. 117 and 119).

On January 29, 2016, Plaintiff filed a motion in limine to admit ten of the thirteen employee statements at trial. (Docket Entry No. 125). Also, in a letter dated January 29, 2016, Plaintiff mailed unredacted copies of the employee statements to Defendants. (Docket Entry No. 137-4). According to Defendants, this disclosure was the first time that Defendants learned of the identities of the individuals whose statements will be used against it at trial. After the pretrial hearing on February 22, 2016, Plaintiff provided Defendants with the face of the subpoenas that have been served to date that include four of the ten individuals who purportedly signed employee statements.

Defendants assert that they do not know if any of the employees who authored the employee statements are supervisors, or have any input into Defendants' payment practices. Defendants also cite that the employee statements are neither sworn to by the witnesses, nor are the identities of the witnesses validated by a licensed notary. (Docket Entry No. 146).

Rule 801(d)(2)(D) of the Federal Rules of Evidence provides that "[a] statement that meets the following conditions is not hearsay: . . . was made by the party's agent or employee on a matter within the scope of that relationship and while it existed." Fed. R. Evid. 801(d)(2)(D). A "'[s]tatement' means a person's oral assertion, written assertion, or nonverbal conduct, if the person intended it as an assertion." Fed. R. Evid. 801(a). The Notes of the Advisory Committee explains the purpose of Rule 801(d)(2)(D) as follows:

---

[1]The initial trial date in this action was set for April 22, 2014, but was continued to July 1, 2014, and then to August 5, 2014. (Docket Entry No. 52 and 61).

(2) *Admissions.* Admissions by a party-opponent are excluded from the category of hearsay on the theory that their admissibility in evidence is the result of the adversary system rather than satisfaction of the conditions of the hearsay rule. Strahorn, *A Reconsideration of the Hearsay Rule and Admissions*, 85 U.Pa.L.Rev. 484, 564 (1937); Morgan, *Basic Problems of Evidence* 265 (1962); 4 Wigmore § 1048. No guarantee of trustworthiness is required in the case of an admission. The freedom which admissions have enjoyed from technical demands of searching for an assurance of truthworthiness in some against-interest circumstance, and from the restrictive influences of the opinion rule and the rule requiring firsthand knowledge, when taken with the apparently prevalent satisfaction with the results, calls for generous treatment of this avenue to admissibility.

The rule specifies five categories of statements for which the responsibility of a party is considered sufficient to justify reception in evidence against him:

. . . .

(D) The tradition has been to test the admissibility of statements by agents, as admissions, by applying the usual test of agency. Was the admission made by the agent acting in the scope of his employment? Since few principals employ agents for the purpose of making damaging statements, the usual result was exclusion of the statement. Dissatisfaction with this loss of valuable and helpful evidence has been increasing. A substantial trend favors admitting statements related to a matter within the scope of the agency or employment. Grayson v. Williams, 256 F.2d 61 (10th Cir.1958); Koninklijke Luchtvaart Maatschappij N.V. KLM Royal Dutch Airlines v. Tuller, 110 U.S.App.D.C. 282, 292 F.2d 775, 784 (1961); Martin v. Savage Truck Lines, Inc., 121 F.Supp. 417 (D.D.C.1954), and numerous state court decisions collected in 4 Wigmore, 1964 Supp. pp. 66-73, with comments by the editor that the statements should have been excluded as not within scope of agency. For the traditional view see Northern Oil Co. v. Socony Mobil Oil Co., 347 F.2d 81, 85 (2d Cir.1965) and cases cited therein. Similar provisions are found in Uniform Rule 63(9)(a), Kansas Code of Civil Procedure Â§ 60-460(i)(1), and New Jersey Evidence Rule 63(9)(a).

Fed. R. Evid. 801(d) advisory committee's note (1972).

"Whether a statement qualifies as nonhearsay under Rule 801(d)(2)(D) . . . goes beyond simply determining if the declarant is a direct decision-maker with regard to the adverse employment action." Carter v. Univ. of Toledo, 349 F.3d 269, 275 (6th Cir. 2003). In Carter, the Sixth Circuit cited, approvingly, Williams v. Pharmacia, Inc., 137 F.3d 944 (7th Cir.1998), "where the court

rejected the employer's argument that 'an employee's statement regarding a particular action of the employer qualifies as a vicarious admission under Rule 801 only if the employee-declarant was involved in the decisionmaking process leading up to the employer's action.'" Id. There the Seventh Circuit stated:

> The precise reach of Rule 801(d)(2)(D) is sometimes difficult to discern, as there has been considerable debate about the justification for classifying vicarious admissions as non-hearsay. We are reluctant to follow [the employer's] suggestion and read into the rule a generalized "personal involvement" requirement, especially in light of the Advisory Committee's admonition that "[t]he freedom which admissions have enjoyed ... from the restrictive influences of ... the rule requiring firsthand knowledge ... calls for generous treatment of this avenue to admissibility."

Williams, 137 F.3d at 950 (internal citations omitted).

The Seventh Circuit, however, concluded that under the facts of the case "the evidence should have been excluded because the statements did not relate to matters within the scope of the declarants' agency or employment." Id. The Court summarized the issue as follows:

> Williams and her former supervisor, Mike Baker, testified that five other women employed by Pharmacia had expressed dissatisfaction with the way that Pharmacia, and in particular Paul Lopez, was treating them. Lisa Bleisch told Williams that Lopez refused to assign her a different supervisor after she complained that her current supervisor was discriminating against her because of her sex. In addition, Baker testified that Bleisch told him that "Paul [Lopez]'s oppressive management style was too much for her and she just couldn't take it and she was going to get out." Sue Ponikar told Baker that she "just couldn't take reporting to Paul [Lopez] anymore, it was just too oppressive and she had to get out." Sue Marovic informed Baker that she believed Lopez "was trying to run her off" by making "unreasonable demands" on her. Kathy Kahn told Baker that she suspected Lopez was "out to get her" and that this was the reason why Baker, who was on the same level as Kahn in the corporate structure, had been asked to supervise and evaluate her performance. Finally, Pat Hanlon complained to Williams about the low ratings she received from her supervisor and reported that, when she complained, the company's only response was to give her a new computer. Williams also introduced into evidence Hanlon's resignation letter in which she complained about discrimination and harassment by her supervisor and criticized Paul Lopez for failing to take any action. Williams introduced these out-of-court statements to demonstrate a pattern or practice of sex discrimination at the company.

Id. at 949-50.

The Seventh Circuit concluded:

> Although the complaints voiced by the five women described their unhappiness with their jobs and with their supervisors, not everything that relates to one's job falls within the scope of one's agency or employment. None of the women were agents of Pharmacia for the purpose of making managerial decisions affecting the terms and conditions of their own employment. These decisions were made by their superiors at the company. The evidence was introduced at trial to support the plaintiff's theory of a pattern and practice of discriminatory decisionmaking, but there is no evidence that any of the five women were privy to or participated in Pharmacia's decisions affecting them. They were the subjects of those decisions; they did not make them. Although the women knew the outcomes of the managerial decisions at issue and the effects that those decisions had on them, the decisionmaking process itself—which is the relevant issue in proving a pattern or practice of discrimination-was outside the scope of the women's agency or employment.

Id. at 950-51.

Yet, in Aliotta v. Nat'l R.R. Passenger Corp., 315 F.3d 756 (7th Cir. 2003), the Seventh Circuit elaborated:

> While the hiring/firing/promoting/demoting decisionmaking authority of the declarant may be critical in employment cases in which the admission deals with hiring/firing/promoting/demoting-type decisions, no similar requirement exists in other contexts. The only requirement is that the subject matter of the admission match the subject matter of the employee's job description.

Id. at 762; Wilkinson v. Carnival Cruise Lines, Inc., 920 F.2d 1560, 1565 (11th Cir. 1991) ("Nothing in Rule 801(d)(2)(D) prevents the out-of-court statements of low-level employees from coming into evidence as non-hearsay admissions of a party-opponent in appropriate factual scenarios."); see DCS Sanitation Mgmt. v. OSHRC, 82 F.3d 812, 815 (8th Cir. 1996) (ALJ determined that employee statements taken by OSHA investigator were admissible as non-hearsay statements against an employer under Rule 801(d)(2)(D)).

Here, the employee statements pertain to an employees' job, the hours worked and their compensation. In this factual context, the Court concludes that the employees' job and hours worked matches their compensation for that particular job. For example, the job of bus boy entails certain actual duties, and those duties and the hours worked performing that job's duties relate to the compensation received. See Solis v. China Star of Wichita, Inc., No. 08-1005-KMH, 2012 WL 1059876, at *2 (D. Kan. Mar. 28, 2012) ("The written statements concerning the hours worked and rates of pay are not hearsay. . . . There is no question the written statements . . . address matters within the scope of that relationship.").

Accordingly, the Court concludes that the employee statements are admissible under Rule 801(d)(2)(D).

Defendants also contend that the employee statements should not be allowed because Plaintiff misused the "informant's/informer's privilege" and violated the spirit and letter of the Federal Rules of Civil Procedure and Evidence that is tantamount to "trial by ambush." Defendants argue that if Plaintiff's motion is granted, the employee statements would be admitted as substantive evidence at trial without Defendants having an opportunity to cross-examine its authors, or allow the jury to assess the veracity of their claims or the credibility of their testimony.

"[T]he informer's privilege is in reality the Government's privilege to withhold from disclosure the identity of persons who furnish information of violations of law to officers charged with enforcement of that law." Roviaro v. United States, 353 U.S. 53, 58 (1957). This privilege is clearly established and has been invoked frequently in FLSA cases. United States v. Julius Doochin Enterprises, Inc., 370 F. Supp. 942, 943 (M.D. Tenn. 1973); Perez v. Am. Future Sys., Inc., No.

CIV.A. 12-6171, 2013 WL 5728674, at *2 (E.D. Pa. Oct. 21, 2013). The Supreme Court has described the privilege as follows:

> The purpose of the privilege is the furtherance and protection of the public interest in effective law enforcement. The privilege recognizes the obligation of citizens to communicate their knowledge of the commission of crimes to law-enforcement officials and, by preserving their anonymity, encourages them to perform that obligation. The scope of the privilege is limited by its underlying purpose. Thus, where the disclosure of the contents of a communication will not tend to reveal the identity of an informer, the contents are not privileged. Likewise, once the identity of the informer has been disclosed to those who would have cause to resent the communication, the privilege is no longer applicable. A further limitation on the applicability of the privilege arises from the fundamental requirements of fairness. Where the disclosure of an informer's identity, or of the contents of his communication, is relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause, the privilege must give way. . . .
>
> . . . .
>
> We believe that no fixed rule with respect to disclosure is justifiable. The problem is one that calls for balancing the public interest in protecting the flow of information against the individual's right to prepare his defense.

Roviaro v. United States, 353 U.S. 53, 59-62 (1957) (footnotes and citations omitted).

In FLSA cases, "[t]he rationale behind the privilege is that enforcement of the Act is highly dependent on the cooperation of, and statements given by, employees." Brennan v. Engineered Products, Inc., 506 F.2d 299, 302 (8th Cir. 1974) (citing Julius Doochin Enterprises, 370 F. Supp. at 944). Therefore, there is "a concomitant need for protecting those employees from potential retribution from employers." Julius Doochin Enterprises, 370 F. Supp. at 944. Thus, "the essence of the protection is non-disclosure of the identity of an informer, not the contents of his communication." Id. Courts tend to deny a defendant's request to pierce the informer's privilege so as to prepare adequately for trial "because such litigation generally revolves around a defendant's own documents and records, and because a defendant is free to seek out the very same witnesses in

8

order to interview them, depose them or seek declarations from them." Perez, 2013 WL 5728674, at *4; see id. at *3 (noting that "the overwhelming majority of courts presented with the assertion of the [informer's] privilege in FLSA cases have granted it, particularly during the discovery stage").

Moreover, "efficiency is generally not considered a sufficient reason to pierce the informer's privilege, even when the size of a witness pool makes it unlikely that a defendant would practically be able to interview each potential witness." Id. at *5 (noting that there were 1,800 aggrieved employees); Chao v. Raceway Petroleum, Inc., No. CIV.A. 06-3363JLL, 2008 WL 2064354, at *4 (D. N.J. May 14, 2008) (although there were potentially 600 employee witnesses, court stated that "a claim of efficiency on its own is not 'weighty enough to overcome the public policy against disclosure.'") (citation omitted).

Defendants cite Julius Doochin Enterprises in support of their position that Plaintiff should have disclosed the names of the individuals whose statements it planned to use to establish that Defendants violated the FLSA. There the district court concluded that the

> [informer's] privilege should not preclude disclosure . . . where either the identity of the person giving information has already been disclosed or the person giving information is to be called as a witness by the Government at trial, there being nothing to protect in these two instances. Consequently, the court deems it proper to order the Government to disclose the names of the witnesses it intends to call at trial.

Id. at 945.

Yet, in Julius Doochin Enterprises, after examining case law involving the informer's privilege in FLSA cases, the district court summarized the essence of case law in that area, stating:

> Thus, where disclosure has already been divulged, where disclosure is inevitable because the informer is to be a witness at trial (but note that this apparently must be proximate in time to the trial), or where disclosure of a person's identity would not label him necessarily as an informer (e. g., where the Government has furnished a list of persons who might have information concerning the violation), the privilege does

9

not apply or is set aside. These considerations, which combine the essence of the protection afforded by the informer's privilege and the theory of waiver, point the way toward resolution of the issues at bar.

Id. at 944-45. (emphasis in original and supplied).

Thus, although the district court ordered the government to disclose the names of the witnesses it intended to call at trial, the court recognized that in instances where "disclosure is inevitable because the informer is to be a witness at trial" such disclosure "apparently must be proximate in time to the trial." Julius Doochin Enterprises, 370 F. Supp. at 945; see id. at 944 (citing Wirtz v. Cont'l Fin. & Loan Co. of W. End, 326 F.2d 561, 564 (5th Cir. 1964) and Wirtz v. Hooper-Holmes Bureau, Inc., 327 F.2d 939, 943 (5th Cir. 1964)); see also Reich v. Great Lakes Collection Bureau, Inc., 172 F.R.D. 58, 62 (W.D.N.Y. 1997) ("Thus, if any of the employees whose statements are protected by the informer's privilege are identified as trial witnesses, their statements are discoverable at the time of trial.").

Citing Perez, Plaintiff asserts that "[t]his case stands for the proposition that the informant's privilege is lifted when the Secretary intends to use unredacted employee witness statements in support of a Motion for Summary Judgment or use of those statements before the trier of fact." (Docket Entry No. 144). Defendants, however, contend that Perez and other authorities are distinguishable because here Plaintiff seeks to admit the employee statements in lieu of live testimony. Defendants further contend that Perez "clearly states that the informant's privilege cannot serve as both a sword and a shield." (Docket Entry No. 145 at 2).[2]

---

[2]Defendants do not dispute that the employee statements may be admissible at trial for witnesses who testify, under Federal Rules of Evidence 612 (writing used to refresh a witness's memory) and/or 613 (witness's prior statement).

10

In Perez, the defendants sought the DOL to disclose, two and half months prior to the conclusion of discovery, the identity of twenty representative witnesses who would testify at trial, so that they could be deposed by the defendants. 2013 WL 5728674, at *1. The DOL stated that "it was willing to provide redacted statements of potential employee-witnesses, but, pursuant to the informer's privilege, it did not intend to reveal names of these 'informers' until the summary judgment stage, to the extent it filed such a motion, or at the pre-trial conference." Id. at *2. The district court concluded that the identities of the DOL's witnesses were protected by the informer's privilege and declined to lift the privilege during the discovery stage." Id. at *1, 6.

In reaching its conclusion, the district court discussed the defendant's reliance on Martin v. New York City Transit Authority, 148 F.R.D. 56 (E.D. N.Y. 1993). In Martin, the DOL sought to invoke the informant's/informer's privilege for witnesses whose sworn declarations were to be used to support a motion for summary judgment. Id. at 63-65. The district court concluded:

> the court sustains the informant's privilege with respect to any interview statements taken during the investigation by the DOL of individuals who have *not* provided the DOL with sworn declarations in support of the DOL's motion for summary judgment. Nonetheless, the court finds that plaintiff must turnover the interview statements for the individuals who provided sworn declarations in support of the DOL's motion for summary judgment or, in the alternative, the DOL must forgo submission of the declarations in support of its motion.

Id. at 65 (emphasis in original). As the Perez court summarized, "[i]n other words, the 'sword' was not the collection of witness statements, but the use of those statements before a trier of fact." Perez, 2013 WL 5728674, at *5.

Here, Plaintiff seeks the use of unsworn employee statements as substantive evidence. Yet, the cited case authority does not support this proposition as these cases contemplate that the privilege will be lost once the informant/informer provides sworn testimony, either by way of an affidavit or

11

declaration in support of a motion for summary judgment, or as a witness at trial. Presenting the employee statements at trial would deny Defendants the ability to cross-examine the witnesses. Such a use of the privilege would act as a shield and a sword under these circumstances. Thus, the Court concludes that the unsworn employee statements may not be admitted into evidence at trial in lieu of live testimony as the use of these statements as substantive evidence would be prejudicial to Defendants by depriving Defendants the opportunity to cross-examine the witnesses.

Accordingly, for these reasons, the Court concludes that Plaintiff's motion in limine No. 4-to admit employee statements (Docket Entry No. 125) should be granted in part and denied in part.

An appropriate Order is filed herewith.

**ENTERED** this the ___9th___ day of March, 2016.

WILLIAM J. HAYNES, JR.
Senior United States District Judge